Robert L. Stapleton v. Commissioner.
Stapleton v. Commissioner
Docket No. 52100.
United States Tax Court
T.C. Memo 1955-290; 1955 Tax Ct. Memo LEXIS 50; 14 T.C.M. (CCH) 1119; T.C.M. (RIA) 55290; October 27, 1955
*50 Held, the uncontested deficiencies in petitioner's income tax for the years 1942 to 1947, inclusive, were not due to fraud with intent to evade tax. Earl D. Hendon, Esq., Brown Marx Building, Birmingham, Ala., for the petitioner. Homer F. Benson, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves penalties determined by the respondent under section 293(b) of the 1939 Code on uncontested deficiencies in petitioner's income taxes for the years 1942 to 1947, inclusive, as follows: Amount of
Uncontested
Sec. 293(b)
Year ended
Deficiency
Penalty
December 31, 1942
$ 2,311.54
$ 1,155.77
December 31, 1943
3,716.31
1,484.92 *
December 31, 1944
12,369.90
6,184.95
December 31, 1945
22,120.99
11,060.50
December 31, 1946
17,727.42
12,352.98 *
December 31, 1947
70.20
35.10
Totals
$58,316.36
$32,274.22
The sole issue is whether any part of each deficiency in petitioner's tax for such *51 years was due to fraud with intent to evade tax. Findings of Fact Petitioner was a resident of Birmingham, Alabama, during the years in issue and filed individual income tax returns for such years with the collector of internal revenue for the district of Alabama. Petitioner was a butcher by trade. His formal schooling did not extend beyond the fifth grade. For some years prior to and including those in issue, petitioner was engaged in the retail grocery business. From May 9, 1942, and throughout the years in issue, his grocery store was divided into three departments - a meat department and a produce department, which he operated; and a dry grocery department, which he leased to a Birmingham mercantile firm by the name of Yeilding Bros. Co. The only books which petitioner maintained were kept by his wife and consisted of a 7inch x 9inch account book with 8 columns across the double page of the book. Petitioner's wife used the first 2 columns for cash and credit sales in the meat department; the next 2 columns for cash and credit sales in the produce department; and the remaining 4 columns for cash expenditures such as laundry, express, merchandise, and miscellaneous expenditures. *52 She entered in such columns the daily totals of cash sales from the two cash registers in the store. The daily totals of credit sales and expenditures were entered in the book from the totals of the individual tickets for such sales and expenditures. Neither petitioner nor his wife had any knowledge of bookkeeping and petitioner, up to the time of the hearing, had never attempted to make out a Federal income tax return. Sometime during the 1930's, petitioner employed George Davis to prepare his tax returns. After several years, George Davis secured a permanent position with the United States Government; and thereafter, including the years in issue, petitioner employed George's brother, Roy Davis, to prepare his tax returns. Roy Davis was a butcher by trade. He had no formal accounting training, although he was licensed as a public bookkeeper by the City of Birmingham, and made tax returns for other grocers. At the time of the hearing, he was employed as a butcher. Petitioner served in the United States Navy for 13 months, commencing in November 1942. During the period of his military service, his wife ran the grocery store. In 1948, respondent commenced an investigation of *53 petitioner's tax returns for the years in issue. The revenue agents who conducted that first investigation determined deficiencies for such years in the approximate amount of $96,000. Because of the lack of books and records, the agents used the bank deposits and expenditures method for determining petitioner's income. Subsequent to the first investigation, petitioner employed a C.P.A., who made a thorough review of petitioner's books and records, bank deposits, and expenditures for the years in issue. On the basis of the results which the accountant reached, the respondent ordered a second investigation and the revenue agent making that investigation determined deficiencies of approximately $58,000 for the years in issue. Petitioner acquiesced in that determination but disputes the respondent's determination that such deficiencies were due to fraud with intent to evade tax. The principal cause for petitioner's understatement of income was the way certain charge accounts were handled, which was as follows: At the end of each month, petitioner purchased Yeilding Bros.' outstanding charge accounts at a 5 per cent discount. Petitioner purchased such accounts because it was confusing *54 to customers to receive a bill from Yeilding Bros. and another from petitioner for groceries purchased in the same store. Roy Davis, in making out petitioner's State sales tax returns, deducted the amount of the charge accounts purchased from Yeilding Bros. from petitioner's total sales as shown in the book kept by petitioner's wife. Davis made petitioner's Federal income tax returns from the data contained in the State sales tax returns. Petitioner did not report as income the collections which he subsequently made on the charge accounts purchased each month from Yeilding Bros. However, he did not claim any deduction for bad debts on such accounts. A part of the deficiencies was also due to the fact that petitioner understated the amount of rent which he received from Yeilding Bros. No part of the uncontested deficiencies in income tax for the years in issue was due to fraud with intent to evade tax. Opinion RICE, Judge: The principal fact upon which the respondent relies in attempting to establish by clear and convincing evidence that the uncontested deficiencies were due to fraud with intent to evade tax was that petitioner consistently understated his income by substantial *55 amounts over a 6-year period, citing ; and (C.A. 6, 1940). It is true that consistent understatement of income by substantial amounts over a period of years is often highly persuasive evidence of fraudulent intent. ; , on appeal C.A. 5, January 1955. In the light of the entire record here, however, that fact alone is not clear and convincing proof of fraudulent intent on petitioner's part. Petitioner was an uneducated man with little formal schooling. He testified at the hearing concerning the large volume of business which he did during the war years, the long hours which he and his wife worked, and the shortage of experienced help. He was totally unfamiliar with the provisions of the taxing statute. He never made out a tax return. He relied on Roy Davis, a friend of many years standing and one whom he believed was capable of preparing tax returns, to make out his returns and report thereon the correct amount of tax due. Davis' knowledge of bookkeeping was limited. And while it is *56 not clear whether it was his idea or petitioner's to handle the Yeilding Bros.' charge accounts as they did, we are satisfied that under the circumstances their treatment of those accounts was not a calculated device to evade taxes. Petitioner should have kept adequate books and records. And, in view of his own admitted ignorance of tax matters, he should have relied on someone of proven capability to prepare his returns. But ignorance and negligence on his part are not the equivalent of a fraudulent intent to evade taxes. ; . Decision will be entered under Rule 50. *
Footnotes
*. These amounts vary from 50 per cent of the uncontested deficiencies because of the forgiveness feature in the 1943 Revenue Act and because of an operating loss carry-back from 1948 to 1946.↩
*. Pursuant to Official Order of the Tax Court, dated December 15, 1955, and signed by Judge Rice, this sentence was amended by substituting "under Rule 50" for "for the petitioner".↩